VLOCK & ASSOCIATES, P.C.
Attorneys for New Falls Corporation
630 Third Avenue, 18th Floor
New York, New York 10017
(212) 557-0020
Stephen Vlock, Esq.
svlock@vlocklaw.com

Date of Hearing:
December 11, 2023 at 9:30 a.m.

Objection Deadline:
December 4, 2023 at 4:00 p.m.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re:

       SONI HOLDINGS, LLC,

                              Debtor.
----------------------------------------------------------------X

Chapter 11

Case No. 23-73863 (reg)

## MOTION OF NEW FALLS CORPORATION FOR AN ORDER (I) DISMISSING THE DEBTOR'S SINGLE ASSET REAL ESTATE CHAPTER 11 CASE OR CONVERTING IT TO A CASE UNDER CHAPTER 7 AND (II) GRANTING STAY RELIEF

New Falls Corporation ("New Falls"), a party-in-interest in the single asset real estate case of Soni Holdings, LLC ("Soni Holdings" or "Debtor"), by its counsel Vlock & Associates, P.C., seeks an order: (I) pursuant to section 1112(b) of Title 11 of the United States Code ("Bankruptcy Code") and Rules 1017(f), 2002(a)(4), 9013 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), dismissing the Debtor's case or converting it to a case under Chapter 7 of the Bankruptcy Code; (II) if the Court does not dismiss the case, lifting the automatic stay of section 362(a) to permit New Falls to pursue certain pending litigation against the Debtor and its principals; and (III) granting such other and further relief as the Court deems just and proper.  In support thereof, New Falls respectfully states:

## JURISDICTION AND VENUE

1.      The Court has subject matter jurisdiction over this motion ("<u>Motion</u>") under and pursuant to 28 U.S.C. §§ 157 and 1334.

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3.      Venue of this Motion is proper in this District under and pursuant to 28 U.S.C. § 1409.

## PRELIMINARY STATEMENT

4.      Dismissal of this single asset real estate case or its conversion to chapter 7 is appropriate and necessary. The Debtor has no business operations or any income and is just a shell holding company for a gutted and deteriorating commercial property in Missouri having little value.  New Falls is essentially the only creditor of the Debtor.[1]  The Debtor never had, and does not have, any prospects of rehabilitation and has filed this case in bad faith, using it as a litigation tactic, because immediately prior to filing the Petition in this Court, the Debtor's principals were about to be subject to incarceration for contempt of court for repeated refusals to comply with court orders compelling postjudgment discovery of assets.

5.      The filings herein also demonstrate the bad faith of the Debtor.  The Debtor initially filed a bare bones petition containing very little information, without any schedules.  The Debtor has just recently filed schedules, which are incomplete. The Debtor's Statement of Financial Affairs also fails to state where the Debtor's books and records are located.  Further, the petition and schedules were signed by Kunal Soni as manager of the Debtor.  However, Kunal Soni recently

---

[1] While the Petition lists the only other creditor as Francois County Collector in Missouri, presumably for real estate tax arrears, the Debtor lists the amount at "Unknown."

submitted an affidavit in the pending state court action, in which he swore under oath that he has not been involved with the Debtor, Soni Holdings, in any way since 2012.  Thus, the Debtor is continuing its bad faith and fraudulent conduct even before this Court.[2]

6.      If for any reason the Court decides that the case should not be dismissed or converted or decides to convert the case, the Court should lift the automatic stay to allow New Falls to proceed with its pending actions against the Debtor and its principals.

**INTRODUCTION**

7.      The Bankruptcy Code lists several non-exclusive categories of "cause" which, if present, mandate (with one exception not applicable here) dismissal or conversion, including the enumerated cause of substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation, both of which are present here. Controlling Second Circuit case law adds to that list other types of cause, including the chapter 11 case being filed in bad faith or reflecting attributes of bad faith, also both of which are present here, and this Court is free to consider any other applicable cause as well.

8.      New Falls demonstrates below that (a) the estate is incurring continuing loss and diminution and that the Debtor has <u>no</u> prospects of rehabilitation (*i.e.*, a listed "cause"), and (b) the Debtor is using this case only as a litigation tactic with the lack of any prospect to reorganize, clearly showing bad faith under applicable case law.  Allowing the Debtor to remain in chapter 11 without requiring it to demonstrate with evidentiary support that there is

---

[2] The Debtor also recently submitted a "Lar-Dan" affidavit in connection with its retention application that does not disclose the connection of the funder of counsel's retention to the Debtor or its principals and such affidavit is improperly notarized (name of notary and registration number is missing).

a reasonable possibility of a successful reorganization within a reasonable time, would merely permit the Debtor to illegitimately prejudice New Falls and abuse the Bankruptcy Code and this Court, just as it abused the state court causing that court to issue fines and threaten to issue an arrest warrant for the purported owner of Soni Holdings.

9.      In addition, to the extent that the Court does not dismiss the case, whether due to denial of the Motion or a decision to convert it to chapter 7 instead of dismissal, the Court should lift the automatic stay with respect to pending litigation of New Falls against the Debtor.

## FACTS

10.      On or about May 14, 2007, Soni Holdings executed and delivered to New Falls' predecessor-in-interest, AmSouth Bank, a Note for Business and Commercial Loans ("Note") for a business loan in the sum of $301,216.50, to be repaid with interest at the rate set forth therein. The Note was assigned and transferred to New Falls.

11.      New Falls sued to recover on the Note and, on February 22, 2018, obtained judgment in the United States District Court, Northern District of Alabama, Case No.17-cv-1330, against Soni Holdings in the sum of $265,834.84 (the "Judgment").

12.      On April 16, 2018, the Judgment was docketed in the United States District Court, Eastern District of New York, in the action entitled, "New Falls Corporation v. Soni Holdings, LLC," Case No. 18-misc-1111, in the sum of $265,834.84. The Judgment was also transcripted and filed with the Clerk of the County of Nassau on April 26, 2018, thereby domesticating the Judgment in New York.  The Judgment has not been satisfied.

13.     Approximately nine months after the Judgment was entered in the Northern District of Alabama and seven months after it was docketed in the Eastern District of New York, New Falls took the deposition of Kunal Soni, the purported manager of Soni Holdings, in New York. In an effort to continue to hinder, delay and defraud New Falls, Kunal Soni offered perjurious testimony under oath when questioned about the assets of Soni Holdings.  Specifically, on November 26, 2018, Kunal Soni, as manager of Soni Holdings falsely testified that the only asset ever owned by Soni Holdings was located in the State of Missouri.  Specifically, Kunal Soni testified in pertinent part:

> Q.   What assets, other than 1175 East Karsch Boulevard in Missouri, does Soni Holdings, LLC currently own?
>
> A.   That's it.
>
> Q.   Have there been any other assets that Soni Holdings has owned since you've been managing member, since 2013?
>
> A.   No, not that I'm aware of, no.

14.     However, the above-quoted sworn testimony by Kunal Soni, as manager of Soni Holdings, was a lie intended to hinder, delay and defraud New Falls from discovering the fraudulent transfer of a commercial property located in Newark, New Jersey (the "<u>Newark Property</u>"), worth approximately two million dollars ($2,000,000.00), to an entity owned by Kunal Soni himself, in order to hinder New Falls' recovery on the Judgment.

15.     On or about January 23, 2019, as soon as New Falls discovered several fraudulent transfers and further unlawful acts by Soni Holdings and its owners, in their long-standing ongoing pursuit of defrauding New Falls, New Falls commenced an action in the United States District Court, Eastern District of New York, entitled, "New Falls Corporation

5

v. Soni Holdings, LLC, et al." Case No. 19-cv-449 ("RICO Action"), which is currently pending.

16.     By Order dated January 24, 2023, the court in the RICO Action granted a preliminary injunction prohibiting Soni Holdings and other defendants from encumbering or further transferring the Newark Property, to prevent further fraud which would obstruct or forestall New Falls from recovering on the Judgment.

17.     Thereafter, Soni Holdings and its owners filed not just one, but three (3) appeals of interlocutory orders regarding the preliminary injunction and an order of the court refusing to grant leave to file a motion on the pleadings, as well as a motion for reconsideration in the RICO Action regarding the preliminary injunction.  All the appeals and the motion were either dismissed and/or denied.

18.     While the RICO Action was pending, New Falls caused to be prepared and served a judicial subpoena duces tecum dated January 6, 2021, directed to Soni Holdings, by Kunal Soni, based upon the Judgment, which was docketed in the New York State Supreme Court, Nassau County. The subpoena required, *inter alia*, Soni Holdings to produce documents and appear for deposition.  Soni Holdings failed to comply with the subpoena.

19.     On February 2, 2021, New Falls was forced to commence a proceeding for contempt against Soni Holdings in New York State Supreme Court, Nassau County, entitled, "New Falls Corporation v. Soni Holdings, LLC," Index No. 601304/2021 ("State Court Contempt Action").

20.     Soni Holdings never responded to the petition for contempt in the State Court Contempt Action.

21.     On May 4, 2021, the Supreme Court, Nassau County, duly issued an Order of Contempt, which found that "Respondent has failed to comply with the judicial subpoena duces tecum served by petitioner, which the court finds to have been calculated to and actually did impair, impede and prejudice rights of plaintiff."  The court further directed that Soni Holdings appear before the court on June 16, 2021, and directed New Falls to serve Soni Holdings with the Order of Contempt.  Soni Holdings was personally served on May 6, 2021.

22.     On July 7, 2021, counsel for New Falls appeared before the state court for the contempt hearing in the State Court Contempt Action pursuant to the May 4, 2021 Order of Contempt.  After waiting two (2) hours in Court, Soni Holdings failed to appear.  The court stated on the record that another Order of Contempt would be issued to have Soni Holdings by its owner/manager physically brought before the court to decide what punishment or sentence there would be for its contempt.

23.     On July 13, 2021, the court in the State Court Contempt Action issued a second Order of Contempt, again finding that Soni Holdings was in contempt, and still had not complied with the said subpoena or the court's prior Order of Contempt.  The court further fined Soni Holdings for its contempt and directed that Soni Holdings appear in court on August 18, 2021.

24.     Thereafter, Soni Holdings filed a deceitful motion to vacate the Contempt Orders falsely alleging that the Federal Court had previously quashed the same Post-Judgment Subpoena. As a result of Soni Holdings' untrue allegations, the court in the State Court Contempt Action vacated the Contempt Orders.  However, upon New Falls' motion for reargument, the court in the State Court Action issued an Order, dated March 16, 2022, finding that there was no such order

quashing the said Subpoena and reinstated the Contempt Orders, and directed Soni Holdings to appear again on April 19, 2022, in court to account for its contempt.

25.     On April 19, 2022, Respondent failed to appear in court in the State Court Contempt Action as ordered by the court and failed to bring payment of the fine.  As a result, the court issued yet another fine for the continued contempt.

26.     On September 23, 2022, the court in the State Court Contempt Action entered another Order issuing contempt sanctions for attorneys' fees and costs against Soni Holdings for its conduct in the sum of $12,500.00.  The court also issued a $500 sanction against Soni Holdings' counsel, Wesley Mead, Esq., for his unlawful conduct.  Notably, Mr. Mead had filed a false "Affirmation of Engagement" in an attempt to obtain an adjournment of the contempt proceedings, but truly he was seeking an adjournment because his clients, Om Soni and Anjali Soni from Soni Holdings were out of the country in India when they knew they were supposed to be in court.

27.     Although more than a year has passed, Soni Holdings has still refused to pay the $12,500.00 fine.  Mr. Mead personally paid the $500 sanction against him but has been replaced as counsel for Soni Holdings.  Notably, there have been approximately ten different attorneys representing Soni Holdings in the various matters pending in the State Court Contempt Action and various Federal Court actions.

28.     On August 28, 2023, New Falls was forced to file another motion in the State Court Contempt Action for further contempt sanctions due to the failure by Soni Holdings to comply with a so-ordered stipulation to provide further documents pursuant to the multiple Orders of Contempt.

29.     On October 11, 2023, the parties appeared before Judge Jimenez in the State Court Contempt Action.  At that time, appearing for Soni Holdings was Om P. Soni, who is the father of Kunal Soni and the husband of Anjali Soni, the purported owner of Soni Holdings.  Om P. Soni is also the guarantor of the debt owed by Soni Holdings to New Falls.   It was agreed that Soni Holdings would resolve its contempt by paying the full amount of the Judgment plus interest and the attorneys' fees ordered pursuant to the contempt (approximately $458,000.00 in total) on Friday, October 13, 2023.  Thus, the court adjourned the contempt proceedings.

30.     On October 13, 2023, Soni Holdings, by Om P. Soni, appeared in the State Court Contempt Action.  Judge Jimenez ruled from the bench that Soni Holdings was still in contempt and stated, in no uncertain terms, that she was going to issue a Warrant of Arrest for the alleged principal of Soni Holdings, Anjali Soni, for failing to comply with the multiple Orders of Contempt.  Specifically, Judge Jimenez told Om Soni that by transferring ownership of Soni Holdings from his name to his wife, Anjali Soni, he imperiled her and caused her to be the individual who was going to be arrested for contempt of his company, Soni Holdings.

31.     After Mr. Soni was warned by the court during the October 13, 2023 hearing in the State Court Contempt Action, in an attempt to forestall the issuance of a Warrant of Arrest, Om Soni stated in open court that he would satisfy the Judgment.  However, he claimed that he would need a few more days to bring the check for approximately $458,000.00.  He told the court that he would have it by the following Wednesday, October 18, 2023.   Accordingly, the State Court Action was adjourned to October 18, 2023 upon the promise by Mr. Soni.  Mr. Soni was warned that unless he satisfied the Judgment as promised, the court would issue the Warrant of Arrest for the alleged owner of Soni Holdings, Anjali Soni.

32.     On October 18, 2023, Soni Holdings failed to bring the check to pay the Judgment as promised.  Instead, on the same morning that Soni Holdings was supposed to bring a check to satisfy the Judgment, Soni Holdings filed the instant Chapter 11 case.

33.     Notably, the petition in this case, dated October 18, 2023, filed by Soni Holdings, is **signed by Kunal Soni as manager**.  However, Kunal Soni recently submitted an affidavit within the State Court Contempt Action, sworn to on July 31, 2023, in which swore under oath, in paragraph 1 thereof, that he has **not been involved with Soni Holdings in any way since 2012**.  Thus, it appears that the **Debtor and Kunal Soni are continuing their fraudulent conduct even before this Court**.  A copy of the affidavit of Kunal Soni, sworn to on July 31, 2023, is annexed hereto as Exhibit "A."

## ARGUMENT

### I.   THE DEBTOR'S CASE SHOULD BE DISMISSED OR CONVERTED DUE TO BAD FAITH, CONTINUING LOSSES AND DIMINUTION AND NO REASONABLE LIKELIHOOD OF REHABILITATION

#### A.  The Debtor Filed and is Maintaining its Chapter 11 Case in Bad Faith

34.     The filing of the instant Chapter 11 case was done in bad faith.  The Debtor is misusing the chapter 11 process merely to forestall arrest of the Debtor's principals, continue to conceal assets and information from judgment creditor New Falls and to delay litigation in the pending Federal Court actions.  Such circumstances constitute cause to convert or dismiss this case.

35.    Section 1112(b)(1) of the Bankruptcy Code provides, in relevant part, that: "[O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause…."  Section 1112(b)(4) contains a non-exclusive list of circumstances that establish cause, including one that applies here, namely "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."

36.    Cause for conversion or dismissal may also be established through other means, including bad faith in the filing or maintenance of a chapter 11 case.  *See, e.g., C-TC 9th Ave. P'ship. v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1310-11 (2d Cir. 1997) (in affirming dismissal of case for bad faith filing, the court observed "[i]t is important to note that this list is illustrative, not exhaustive."); *In re Ameribuild Constr. Mgmt., Inc.*, 399 B.R. 129, 132 (Bankr. S.D.N.Y. 2009) (granting motion to convert because 'when it is clear that, from the date of the filing, the debtor has no reasonable probability of emerging from the bankruptcy proceedings and no realistic chance of reorganizing, then the Chapter 11 petition may be frivolous.") (quoting *C-TC*, 113 F.3d at 1310).

37.    The Second Circuit, like many of its sister circuits, has held that one form of cause not specifically listed in the Bankruptcy Code but that likewise requires conversion or dismissal, is the debtor's filing of its chapter 11 case in bad faith or the chapter 11 case reflecting attributes of bad faith.  *C-TC,* 113 F. 3d at 1310-11*; see also Official Comm. of Unsecured Creditors v. Nucor Corp. (In re SGL Carbon Corp.*), 200 F.3d 154, 156, 160-62

(3d Cir. 1999) (adopting good faith requirement that a chapter 11 petition must have a valid reorganization purpose).

38.    In *C-TC*, the Second Circuit affirmed the bankruptcy court's dismissal of a chapter 11 proceeding for bad faith where the bankruptcy court found that there was "no likelihood of rehabilitation and [the debtor] would be unable to effectuate a plan." *C-TC,* 113 F.3d at 1311.  The Second Circuit adopted the following eight factors that if present would be adequate to find bad faith:

(1)    the debtor has only one asset;

(2)    the debtor has few unsecured creditors, whose claims are small in relation to those of the secured creditors;

(3)    the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

(4)    the debtor's financial condition is, in essence a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;

(5)    the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

(6)    the debtor has little or no cash flow;

(7)    the debtor can't meet current expenses including the payment of personal property and real estate taxes; and

(8)    the debtor has no employees.

*Id.* at 1311-12.

39.    The inquiry is, of course, fact specific: "[A] determination of bad faith requires a full examination of all the circumstances of the case; it is a highly factual determination but

also one that may sweep broadly." *Id.* at 1312; *see also In re Kingston Square Assocs.,* 214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997) ("Determining whether a petition has been filed in good faith is difficult because the very term itself, 'good faith,' is an amorphous notion that is largely defined by factual inquiry.).

40.    But a finding of bad faith is not difficult here because <u>all</u> the *C-TC* factors apply to the Debtor and there is other indicia of bad faith.   And, perhaps most importantly, the Debtor "has no reasonable probability of emerging from the bankruptcy proceedings and no realistic chance of reorganizing" and its case should be dismissed.   *See C-TC*, 113 F.3d at 1310.  As set forth below, all the C-TC factors show this is a bad faith filing.

41.    <u>This is a single asset real estate case</u>.  The Debtor's sole asset is property located at 1175 East Karsch Boulevard, Farmington, Missouri (the "<u>Missouri Property</u>").

42.    <u>The Debtor has no unsecured creditors</u>, other than possibly the Missouri real estate taxing authority listed in the Petition as "Unknown."  However, the late-filed schedules, filed a month after the petition, are missing Schedules D, E and F.  So, there is no way for the Court and for New Falls to know whether the Missouri real estate taxing authority is actually a creditor or how much they are allegedly owed.  In any event, if the Missouri real estate taxing authority turns out to be a creditor, it would presumably be a secured creditor against the Missouri Property, and as such there are no unsecured creditors.

43.    <u>The Debtor's financial condition is essentially a two-party dispute</u>.  The dispute is between the Debtor and New Falls, as the Debtor has no other creditors.

44.    <u>The timing of the Debtor's filing shows an intent to delay or frustrate the legitimate efforts of New Falls to enforce its rights</u>.  The Debtor filed this bankruptcy case the

same day that the Debtor promised Justice Jimenez that it would bring the sum of $458,000.00 to the court in the State Court Contempt Action.  The Debtor's principal was facing arrest based on the repeated contempt of court.

45.    <u>The Debtor has no cash flow</u>.  The Debtor has no operations and no income, and thus no cash flow.  If anything, it has negative cash flow, as the Debtor has incurred legal fees since its bankruptcy filing and is incurring real estate tax liability for the Missouri Property.

46.    <u>The Debtor cannot meet current expenses, including rent, real estate taxes and insurance</u>.  The Debtor's Schedule of Business Income and Expenses shows $0 on every line.

47.    <u>The Debtor has no employees</u>.  The Debtor has never been an operating business and has never had employees.

48.    <u>Other factors</u>.  Every one of the *C-TC* factors weighs in favor of this case having been filed in or being maintained in bad faith and thus the Debtor must now put forth facts to prove that it has a reasonable prospect to reorganize in a reasonable time.  Courts can consider other factors as well.  The Senate Report for the Bankruptcy Act of 1978 noted: "The court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases."  S. Rep. No. 95-595, at 5903 (1978).

49.    One such factor that the Court should consider is that **the Debtor admittedly has no books or records**.  The Debtor's Statement of Financial Affairs, #26c, expressly sets forth that there are no books and records.  Further, #26a, #26b and #26d, show affirm that no accountant, bookkeeper, person or entity has maintained, audited, or reviewed any of the Debtor's books and records in the past 2 years.

14

50.     Based on the facts and the evidence, New Falls has demonstrated at least a *prima facie* case under the *C-TC* factors that cause exists to dismiss or convert the Debtor's case. <u>The burden is now on the Debtor to prove facts showing it can reorganize</u>.  "Once at issue, the burden falls upon bankruptcy petitioner to establish that the [Chapter 11] petition has been filed in 'good faith.'"  *In re SGL Carbon Corp.*, 200 F.3d at 162 n. 10; 7 Collier on Bankruptcy ¶ 1112.04[4] (16th ed. 2022) ("[I]f the issue is whether the petition has been filed in good faith…the ultimate burden rests on the bankruptcy petitioner."); *cf. In re 68 West 127 Street*, *LLC*, 285 B.R. 838, 842-43 (Bankr. S.D.N.Y. 2002) (applying *C-TC* factors to stay relief motion, observing that once creditor makes a showing of most "bad faith factors," the debtor is required to carry "its burden of persuasion…that it is using the Bankruptcy Code for the valid purpose of confirming a chapter 11 plan and that there is a reasonable possibility of a successful reorganization within a reasonable time."); *see also In re Sherwood Enters., Inc.,* 112 B.R. 165, 170-71 (Bankr. S.D. Tex. 1989) ("The court finds [the] combination of factors establishes a prima facie case of bad faith filing….  Once such a prima facie case has been established, the debtor then has the burden of proof in showing that the filing was in good faith.").  Further, because "the good faith standard is an objective one, the court was not constrained to entertain and give dispositive weight to…the subjective state of mind of [the debtor's] manager." *Elmwood Dev Co. v. Gen. Elec. Pension Tr. (In re Elmwood Dev. Co.*), 964 F.2d 508, 512 (5th Cir. 1992).

51.     The *C-TC* factors are meant as guidelines for courts to follow and apply to the facts of each case as part of the "balancing process between the interests of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to

legitimize the delay and costs imposed upon parties to a bankruptcy." *C-TC*, 113 F.3d at 1310 (quoting *Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986)).  In addition to balancing the legitimate interests of debtors and creditors, the Second Circuit instructed: "[I]f there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its raison d'etre…." *C-TC*, 113 F.3d at 1310 (quoting *In re Winshall Settlor's Tr.*, 758 F.2d 1136, 1137 (6th Cir. 1985)); *see also Stage I Land Co. v. U.S. Housing & Urban Dev. Dep't*, 71 B.R. 225, 231 (Bankr. D. Minn. 1986) ("The stated purpose of Chapter 11 of the Bankruptcy Code is the rehabilitation of a viable business.  Absent a reasonable possibility of an effective reorganization, a case should be dismissed at its outset for cause.").

52.    Considering the presence of  all the *C-TC* bad faith factors as well as other indicators here of bad faith, to avoid dismissal or conversion the Debtor must prove that it is not seeking "to abuse the bankruptcy law by employing it for a purpose for which it is not intended" and is "motivated by plausible, legitimate reorganization (or liquidation) purposes and not solely or predominantly by the mere desire to prevent foreclosure or hinder creditors." *68 West 127 Street*, 285 B.R. at 844.  This it cannot do.

53.    New Falls has thus irrefutably established that this case is not about an economically feasible reorganization, but rather it is an impermissible effort by the Debtor and its principals to use this chapter 11 proceeding to forestall and delay its only creditor, New Falls, from proceeding with litigation, and to prevent the Debtor's principals from receiving the proper contempt sanctions that they have earned due to their fraudulent and contumacious behavior.

**B.  The Debtor is Experiencing Continuing Loss to or Diminution of the Estate and Does Not Have a Reasonable Likelihood of Rehabilitation.**

54.    In view of New Falls' *prima facie* showing of bad faith and the evidence it presented to demonstrate the Debtor's inability to successfully reorganize within a reasonable time, New Falls should not have to address any of the enumerated "cause" in Section 1112(b) of the Bankruptcy Code.  But out of an excess of caution, New Falls will address the cause listed in section 1112(b)(4)(A), which provides that cause includes: "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."

55.    First, this section requires more than a showing of a reasonable possibility of a successful reorganization within a reasonable time in that the section requires a showing or "rehabilitation" rather than "reorganization."  The former constitutes the business being put back on a "sound basis" and the latter is broader, also contemplating a liquidation of the business's assets. *In re AdBrite Corp.*, 290 B.R. 209, 216 (Bankr. S.D.N.Y. 2003) (Rehabilitation requires "that the debtor will be reestablished on a secured financial basis, which implies establishing a cash flow from which its current obligations can be met."); *In re Kanterman*, 88 B.R. 26, 28 (S.D.N.Y. 1988) ("Under Chapter 11 one is certainly entitled to file a plan of liquidation.  That is not a rehabilitation, that is a reorganization."); *see also Loop Corp. v. U.S. Tr.*, 379 F.3d 511, 516 (8th Cir. 2004) ("Courts have consistently understood 'rehabilitation' to refer to the debtor's ability to restore the viability of its business."); *In re The Ledges Apartments*, 58 B.R. 84, 87 (Bankr. D. Vt. 1986) ("Rehabilitation is not reorganization…Rehabilitation,…may not include liquidation."); *In re Landmark Atl. Hess*

*Farm, LLC*, 448 B.R. 707, 714 (Bankr. D. Md. 2011) ("Courts have held that rehabilitation is not synonymous with reorganization.").

56.     The Debtor has no chance of rehabilitation let alone "a reasonable likelihood" of one.

57.     As to "substantial or continuing loss to or diminution of the estate," New Falls is required to show only one of them.  *See* 7 Collier on Bankruptcy ¶ 1112.04[6][a][i] (16th ed. rev. 2022) (loss need only to be substantial <u>or</u> continuing but not both). "To determine whether there is a continuing loss to or diminution of the estate, a court must make a full evaluation of the present condition of the estate, not merely look at the debtor's financials statements." *AdBrite*, 290 B.R. at 215. Continuing loss to or diminution of the estate exists where a debtor consistently suffers a post-petition negative cash flow and is unable to pay current expenses.  *Id. see also In re Silverstein*, 94 B.R. 284, 288 (Bankr. E.D.N.Y. 1988) (continuing diminution where each month the debtor spends more than it makes).

58.     This prong of section 1112(b)(4) may also be present regardless of whether the debtor is bringing in more cash than it is spending, if there is "actual depreciation in the value of property of the estate."  *In re Quail Farm, LLC*, No. 09-bk-298, 2010 WL 1849867, at *3 (Bankr. N.D. W.Va. May 5, 2010) (citing *In re Tolco Properties, Inc*., 6 B.R. 482, 487-88 (Bankr. E.D.Va. 1980); 7 Collier on Bankruptcy ¶ 1112.04[6][a][i] (16th ed. rev. 2022) (Subsection 1112(b)(4) also tests for "declining asset values" and a "diminution in asset value after the commencement of the case [is] sufficient to justify a finding of 'substantial or continuing loss to … the estate.'").  Although some losses may be tolerable in the early stage

of a chapter 11 case, persistent losses weigh in favor or conversion or dismissal. *Silverstein*, 94 B.R. at 288; *Adbrite*, 290 B.R. at 215.

59.    The Court need not find substantial losses, only that there is some continuing losses to or diminution of the estate.  *See In re Taub*, 427 B.R. 208, 231 (Bankr. E.D.N.Y. 2010) ("All that need be found is that the estate is suffering some diminution in value.")

60.    As Collier points out: "In the case of a non-operating debtor, continual accrual of administrative expenses without corresponding income may constitute substantial or continuing loss as contemplated by section 1112(b)(4)(A)."   7 Collier on Bankruptcy ¶ 1112.04 [6][a][i] (16th ed. rev. 2022).

61.    In this case, the Debtor has no operating income.  It is incurring post-petition real estate taxes.  Further, the Debtor is incurring fees for bankruptcy counsel.

62.    All these ongoing administrative expenses are both continuing and substantial. *See, In re Herb Philipson's Army*, No. 18-61376 (DD), 2019 WL 11031654, at *6 (Bankr. N.D.N.Y. Dec. 19, 2019) (The court found indisputable "substantial and continuing losses to and diminution of the estate [due to] Debtor's…inability to pay administrative expenses associated with the wind down of its affairs, completed liquidation, and store closings."); *In re Vaughan Co., Realtors*, No. 11-10-10759, 2013 WL 2244285, at *7 (Bankr. D. N.M. May 21, 2013) ("Where a debtor has stopped operating its business, a continuing diminution can occur based on the accumulation of administrative expenses without a reasonable prospect of payment."); *In re Brutsche*, 476 B.R. 298, 305 (Bankr. D. N.M. 2012) ("[P]rofessional services come at a cost, obviously, which cost needs to be factored in the calculation of gains and losses for the estate. And the hard fact is that these costs are rapidly mounting expenses for the estate that help put the estate

in the position of continuing substantial losses."); FRGR, 419 B.R. at 581 (finding substantial or continuing loss where debtor had no income and "FRGR continues to incur quarterly U.S. Trustee fees as well as legal fees….").

63.    Thus, with the admitted substantial and/or continuing loss to or diminution of the Debtor's estate and the lack of any ability to rehabilitate, cause exists that requires the Court to dismiss or convert the Debtor's case.[3]

## II.    <u>NEW FALLS IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY</u>

64.    In the event that the Court does not dismiss the case and decides against dismissal or conversion  or converts the case to chapter 7, New Falls is entitled to relief from the automatic stay to continue its litigation against the Debtor and those who control it the Debtor's current or fraudulently transferred assets, and to uncover the Debtor's financial records.

65.    Under section 326(d)(1) of the Bankruptcy Code, relief from the stay should be granted upon a showing of "cause" for such relief. 11 U.S.C. § 362(d)(1).  "Cause" is not defined in the Bankruptcy Code but is "a broad and flexible concept" to be determined on a case-by-case basis. *Osuji v. Deutsche Bank, N.A.,* 589 B.R. 502, 508 (E.D.N.Y. 2018); *Boissard v. Specialized Loan Servicing, LLC,* Case No. 19-CV-4280 (MKB) 2020 WL 9816005, *3 (E.D.N.Y. 2020) ("Because '[n]either the statute nor the legislative history defines the term "for cause" and the legislative history gives on very general guidance,' the inquiry of whether relief is appropriate under the circumstances turns on the "facts of each request."); <u>*Musso v. Hirsch,*</u> Nos. 08-cv-4735

---

[3] As noted above, the Debtor has indicated on its Schedules that it has no books are records, justifying dismissal or conversion under 11 U.S.C. § 1112(b)(2)(F).  It appears to also have no or insufficient insurance on its real property, justifying dismissal or conversion under 11 U.S.C. § 1112(b)(2)(C).

*(CBA), 08-cv-4532 (CBA) 2011 WL 4543225, \*6 (E.D.N.Y. 2011)* ("As § 362(d)'s 'cause' standard suggests, bankruptcy judges are vested with considerable discretion 'in deciding whether litigation should be permitted to continue in another forum.'").

66.    In determining whether to modify the stay, the court considers "(i) prejudice to the debtor's estate, (ii) hardship to the moving party, and (iii) probability of success on the merits." *In re McGowan*, 2011 WL 2415534, at \*2.

67.    The facts establish that the Debtor is pursuing this chapter 11 in bad faith, and such a showing is equally sufficient to establish "cause" in Section 362(d)(1) to lift the automatic stay. *See, e.g., 68 West 127 Street*, 285 B.R. at 842-43 (applying *C-TC* factors to stay relief motion); In re Syndicom Corp., 268 B.R. 26, 48 (Bankr. S.D.N.Y. 2001).

68.    Furthermore, in finding "cause" to lift the automatic stay, courts have looked to the factors set forth in *Sonnax Indus. Inc. v. TRI Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280 (2d Cir. 1999), to determine whether to grant relief from the automatic stay so that litigation may proceed in another tribunal. *In re Project Orange Associates, LLC,* 432 B.R. 89, 103 (Bankr. S.D.N.Y. 2010) ("In determining whether the stay should be modified or terminated for cause, courts in this Circuit and elsewhere either (1) analyze 12 factors enumerated by the Second Circuit in Sonnax; or (2) engage in fact-intensive inquiries which appear to be loosely based on the Sonnax factors, mainly attempting to maintain the prepetition status quo ante between the parties.  Some courts utilize a hybrid approach, combining these two analyses.").

69.     In *Sonnax Indus.*, the Second Circuit set forth the following twelve (12) factors to be considered in deciding whether the stay should be lifted to allow litigation to proceed in another forum:

a.  whether relief would result in a partial or complete resolution of the issues;

b.  lack of any connection with or interference with the bankruptcy case;

c.  whether the other proceedings involves the debtor as a fiduciary;

d.  whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

e.  whether the debtor's insurer has assumed full responsibility for defending it;

f.  whether the action primarily involves third parties;

g.  whether litigation in another forum would prejudice the interests of other creditors;

h.  whether the judgment claim arising from the other action is subject to equitable subordination;

i.  whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

j.  the interests of judicial economy and the expeditious and economical resolution of litigation;

k.  whether the parties are ready for trial in the other proceedings; and

l.  impact of the stay on other parties and the balance of the harms.

*Sonnax*, 907 F.2d at 1285-86.

70.    Not all the Sonnax factors are relevant in each case, and the Court need not assign equal weight to each factor.    *In re Celsius Network LLC*, 642 B.R. 497, 501 (Bankr. S.D.N.Y. 2022) ("Not all of the Sonnax factors are relevant in every case. The Court need not assign equal

weight to each factor."); *In re Mid-Atl. Handling Sys.*, LLC, 304 B.R. 111, 130 (Bankr. D.N.J. 2003).

71.     Consideration of the relevant factors under *Sonnax* mandates that the automatic stay be lifted so that New Falls may proceed with its action against the Debtor in New York state court and Federal District Courts.    First, since New Falls is the only unsecured creditor of the Debtor, granting relief from stay would certainly result in a complete resolution of the issues and would not prejudice the interests of any other creditors, because there are no other creditors (other than the taxing authority in Missouri, which is likely secured in the Debtor's real property).  Further, the interests of judicial economy and the expeditious and economical resolution of litigation favor the lifting of the stay to allow New Falls to continue its action in state court as the state court has already extensively dealt with the obstructive behavior of Soni Holdings and its contumacious refusal to comply with court-ordered post-judgment discovery, as well as the recalcitrance of the principals of Soni Holdings.

72.     Based on the above, the automatic stay be lifted so that New Falls may proceed with its action against the Debtor in New York state court and Federal District Court.  Further, due to the history of fraudulent transfers and contempt of court by this Debtor, cause exists for the Court to waive the requirement that an order granting relief from the automatic stay is normally stayed for 14 days under Bankruptcy Rule 4001(a)(3).

## **CONCLUSION**

For all the reasons stated in this Motion, New Falls respectfully requests entry of an order dismissing or converting the Debtor's case, whichever the Court finds to be in the best interests of creditors, and lifting the automatic stay, as set forth above.

Dated:          New York, New York
                November 22, 2023

                                        VLOCK & ASSOCIATES, P.C.
                                        Attorneys for New Falls Corporation
                                        630 Third Avenue, 18th Floor
                                        New York, New York 10017
                                        (212) 557-0020

                                        By: *s/Stephen Vlock*
                                        Stephen Vlock, Esq.
                                        svlock@vlocklaw.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY, that on November 22, 2023, I caused a copy of the within MOTION OF NEW FALLS CORPORATION FOR AN ORDER PURSUANT TO 11 U.S.C. § 1112(b) DISMISSING THE DEBTOR'S SINGLE ASSET REAL ESTATE CHAPTER 11 CASE OR CONVERTING IT TO A CASE UNDER CHAPTER 7 AND GRANTING STAY RELIEF and supporting papers, to be served by ECF and/or mail upon:

Soni Holdings LLC
10 Bel Air Court
Oyster Bay, New York 11771
Attn. Kunal Soni

Soni Holdings LLC
10 Bel Air Court
Oyster Bay, New York 11771
Attn. Anjali Soni

Soni Holdings LLC
10 Bel Air Court
Oyster Bay, New York 11771
Attn. Managing Member

Weinberg, Gross & Pergament LLP
400 Garden City Plaza, Suite 309
Garden City, New York 11530

United States Trustee
Office of the United States Trustee
201 Varick Street, Room 1006
New York, New York 10014

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:       New York, New York
             November 22, 2023

                                    _____
                                         *s/Stephen Vlock*
                                    STEPHEN VLOCK